# Syllabus

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kimberly K. Muschong

ATTORNEY GENERAL v ELI LILLY AND COMPANY

Docket No. 165961.  Argued November 5, 2025 (Calendar No. 1).  Decided July 31, 2026.

The Attorney General filed a petition in the Ingham Circuit Court, requesting authorization to issue subpoenas related to a civil investigation into the practices of Eli Lilly and Company under the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq*., alleging that there was probable cause to believe that Eli Lilly had artificially increased the list prices of its insulin medications in violation of MCL 445.903(1)(z), given the disparity in pricing between its insulin products sold in Michigan and its products sold in other countries and the disparity in pricing between Eli Lilly's branded drug, Humalog, and its generic version, Lispro.  The Attorney General also argued that there was probable cause to believe that Eli Lilly had violated MCL 445.903(1)(i) by making false representations in its promotion of Lispro.

Simultaneously, the Attorney General filed a complaint for declaratory relief under MCR 2.605, seeking a declaration that the civil investigation, and any resultant lawsuit, was not foreclosed by MCL 445.904(1)(a), which provides an exemption from the MCPA for "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States."  The Attorney General argued that *Smith v Globe Life Ins Co*, 460 Mich 446 (1999), and *Liss v Lewiston-Richards, Inc*, 478 Mich 203 (2007)—which both held that this exemption broadly encompasses general transactions authorized by law, even where the specific alleged misconduct is prohibited—were wrongly decided.

The circuit court issued an order concluding that probable cause existed to believe that Eli Lilly violated the MCPA and authorizing the Attorney General to issue civil investigative subpoenas.  Eli Lilly moved to stay the proceedings, including the issuance of subpoenas, pending resolution of the Attorney General's complaint for declaratory relief.  Eli Lilly also moved for summary disposition under MCR 2.116(C)(8), arguing that the sale of pharmaceuticals was a regulated activity and thus exempt from the MCPA under MCL 445.904(1)(a) under *Smith* and *Liss*.

In a stipulated order, Eli Lilly agreed to withdraw its pending motion to stay without prejudice, and the Attorney General agreed to refrain from issuing subpoenas until the declaratory-judgment action resulted in a decision permitting the Attorney General to proceed with her

investigation or another event took place making issuance of subpoenas appropriate. The Attorney General filed a cross-motion for summary disposition under MCR 2.116(I)(1) and MCR 2.116(C)(9), arguing that *Smith* and *Liss* were wrongly decided and that the MCL 445.904(1)(a) exemption should be narrowly construed.

The circuit court, Wanda M. Stokes, J., granted summary disposition in favor of Eli Lilly and dismissed the Attorney General's complaint, ruling that the Attorney General's MCPA claims were foreclosed by *Smith* and *Liss*. The Court of Appeals, RIORDAN, P.J., and BORRELLO and BOONSTRA, JJ., affirmed in an unpublished per curiam opinion, issued June 22, 2023 (Docket No. 362272). The Attorney General sought leave to appeal in the Supreme Court, which directed and heard oral argument on the application. 513 Mich 1003 (2024). Following oral argument, the Supreme Court granted the application, directing the parties to address (1) whether the Attorney General adequately pleaded a claim that Eli Lilly violated the MCPA, (2) whether it was necessary for the Attorney General to adequately plead a violation of the MCPA for a court to determine whether MCL 445.904(1)(a) applies, (3) whether *Smith* and *Liss* correctly interpreted MCL 445.904(1)(a), and (4) if *Smith* and *Liss* were incorrectly decided, whether they should nonetheless be retained under principles of stare decisis. ___ Mich ___; 18 NW3d 513 (2025).

In an opinion by Justice HOOD, joined by Chief Justice CAVANAGH and Justices WELCH and THOMAS, the Supreme Court *held*:

When determining whether an MCPA claim falls under the MCL 445.904(1)(a) exemption, courts should consider whether the specific transaction or conduct at issue, rather than the general transaction, is authorized by law. Because *Smith* and *Liss* were wrongly decided and unsupported by stare decisis principles, they were overruled. The Court of Appeals decision was reversed, the circuit court's order was vacated, and the case was remanded to the circuit court for further proceedings.

1. The Attorney General adequately pleaded a request for declaratory relief. Under MCL 445.907(1), the Attorney General can petition the circuit court to authorize an investigation into an alleged MCPA violation, and the circuit court, if it finds probable cause to believe a person has engaged, is engaging, or is about to engage in a method, act, or practice that is unlawful under the MCPA, may issue a subpoena compelling a person to appear before the Attorney General and answer under oath questions relating to the alleged violation. In this case, the Attorney General filed a petition requesting that the circuit court authorize civil investigative subpoenas on the basis of suspected violations of MCL 445.903(1)(z) and MCL 445.903(1)(i). The circuit court found probable cause, which authorized the Attorney General to serve investigative subpoenas on Eli Lilly or others, and this finding is not being challenged on appeal. Both parties have agreed to a stay of proceedings, effectively pausing the issuance of subpoenas and any challenge to them. Petitions for civil investigative subpoenas are not pleadings, are not required to state a claim under MCR 2.111(B)(1), and are not subject to attack for failure to state a claim under MCR 2.116(C)(8). Instead, the purpose of the investigative stage is to explore and provide context for subsequent claims when probable cause exists. The circuit court found probable cause and authorized investigatory subpoenas based on allegations that Eli Lilly had possibly violated the MCPA through its insulin pricing practices, but the Attorney General's request for subpoenas is not, in

and of itself, an MCPA enforcement action.  The only pleading filed in this case was the Attorney General's complaint for declaratory relief.

2.  Under the circumstances of this case, the Attorney General did not have to first bring a separate claim alleging an MCPA violation for the applicability of MCL 445.904(1)(a) to be litigated.  Generally, a circuit court may grant declaratory relief when there is an actual case or controversy.  Here, a justiciable case or controversy exists with regard to the Attorney General's complaint, which solely sought declaratory relief, because the parties agreed to stay the proceedings and the Attorney General chose not to serve the subpoenas that the circuit court had already authorized.  The posture of this case, which was created by the stipulated stay of proceedings, does not change the fact that a live controversy exists with respect to whether MCL 445.904(1)(a) applies.  Accordingly, declaratory relief was available under MCR 2.605(A)(1).

3.  *Smith* and *Liss* were wrongly decided.  Their broad interpretation of the exemption in MCL 445.904(1)(a) was at odds with the plain language of the statute and essentially nullified all MCPA claims against swathes of industry sectors that would otherwise be subject to consumer-protection claims, contrary to the intent of the MCPA.  The exemption in MCL 445.904(1)(a) states that the MCPA does not apply to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States."  This language is unambiguous and plainly indicates that MCL 445.904(1)(a) was intended to be a narrow exemption.  *Smith* incorrectly characterized it as a "broad exemption" and improperly inserted the word "general" into the statute by holding that the relevant inquiry is not whether the specific misconduct alleged is specifically authorized by law but rather whether the "general transaction" is specifically authorized, regardless of whether the specific misconduct alleged is prohibited.  *Liss* reinforced *Smith*'s holding, stating that the MCL 445.904(1)(a) exemption requires a "general" transaction that is explicitly sanctioned, despite the fact that the word "general" does not appear anywhere in the text of MCL 445.904(1)(a), thereby broadening the MCL 445.904(1)(a) exemption in a manner that was contrary to legislative intent.  Further, *Smith*'s and *Liss*'s interpretation of MCL 445.904(1)(a) wrote the phrase "specifically authorized" out of the statutory language, which allowed the exemption to apply broadly to nearly all claims against regulated businesses and licensed entities and judicially immunized those entities from MCPA claims without consideration of whether the conduct or transaction alleged was related to the licensure or regulation.  Neither the text nor the purpose of the MCPA supported such a result.  Moreover, the interpretation in *Smith* and *Liss* was inconsistent with some provisions of the MCPA and rendered other sections of the MCPA completely nugatory.

4.  Stare decisis principles did not prevent *Smith* and *Liss* from being overruled.  *Smith* and *Liss* rendered much of the MCPA completely unworkable by transforming MCL 445.904(1)(a) into an exemption so broad that it precludes most MCPA claims.  By misconstruing this narrow exemption and ignoring the statute's plain language and purpose, these decisions disrupted the reliance interest for consumer protections.  To the extent that Michigan businesses are relying on *Smith* and *Liss* to engage in unfair, unconscionable, or deceptive business practices otherwise prohibited by the MCPA without the fear of repercussion, their interest is not valid.  Further, public-policy interests weigh in favor of overruling *Smith* and *Liss* because those decisions severely limit the ability to conduct state-specific consumer-protection enforcement, and they were a stark and inexplicable departure from the interpretation of MCL 445.904(1)(a) in *Attorney*

*General v Diamond Mtg Co*, 414 Mich 603 (1982), which *Smith* essentially overruled without conducting a stare decisis analysis.

Court of Appeals judgment reversed; circuit court order vacated; case remanded to the circuit court for further proceedings.

Justice BOLDEN, joined by Justices ZAHRA and BERNSTEIN, dissenting, concluded that the Attorney General did not have standing to litigate the questions before the Court because no violation of the MCPA was alleged and, without a case of actual controversy, declaratory relief was unavailable under MCR 2.605(A)(1). She thought that the majority sidestepped the actual-controversy requirement for standing by relying on the fact that plaintiff filed a petition for investigative subpoenas in a secondary case in a separate docket. She further believed that the investigative-subpoena process was an ex parte process that could not meet the requirements of MCR 2.605(A)(1). She stated that even if there had been an actual controversy in this case that gave rise to standing, the majority would have exceeded the permissible scope of declaratory relief, which was not needed to guide the parties' future conduct in this case in light of their agreement that *Smith* and *Liss* are binding precedent that would seemingly bar this lawsuit. She reserved judgment on whether *Smith*, *Liss*, or both cases have analytic flaws or whether those cases ought to be preserved by way of stare decisis and would simply have affirmed the longstanding requirement that a party needs to demonstrate standing before a court can address the underlying substantive legal issues presented.

# OPINION

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

FILED  July 31, 2026

STATE OF MICHIGAN

SUPREME COURT

ATTORNEY GENERAL,

      Plaintiff-Appellant,

v

No. 165961

ELI LILLY AND COMPANY,

      Defendant-Appellee.

BEFORE THE ENTIRE BENCH

HOOD, J.

This case is about the scope of the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq*.  Plaintiff, the Michigan Attorney General (the AG), sought and obtained authorization from the Ingham Circuit Court to issue subpoenas while investigating the insulin-pricing practices of defendant, Eli Lilly and Company, for potential violations of the MCPA.  Alongside her subpoena request, the AG filed a complaint for declaratory relief, seeking a declaration from the Ingham Circuit Court that

her investigation, and any resultant lawsuit, is not foreclosed by MCL 445.904(1)(a), which provides an exemption from the MCPA for "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States."

In *Smith v Globe Life Ins Co*, 460 Mich 446; 597 NW2d 28 (1999), and *Liss v Lewiston-Richards, Inc*, 478 Mich 203; 732 NW2d 514 (2007), this Court held that the MCL 445.904(1)(a) exemption broadly encompasses general transactions authorized by law, even where the specific alleged misconduct is prohibited. In this case, the Ingham Circuit Court granted Eli Lilly's motion for summary disposition and dismissed the AG's complaint for declaratory relief, reasoning that the MCL 445.904(1)(a) exemption applied because Eli Lilly was authorized by law to manufacture and sell insulin products. The Court of Appeals affirmed.

Although the AG has not yet filed a complaint pleading an MCPA violation, this case involves a justiciable controversy because the trial court authorized the AG to issue investigatory subpoenas related to her investigation into Eli Lilly, and the parties dispute the proper interpretation of MCL 445.904(1)(a). Accordingly, declaratory relief is necessary to guide the parties' future conduct, and the AG was not required to plead an MCPA violation for this Court to address the applicability of the MCL 445.904(1)(a) exemption. Furthermore, when determining whether an MCPA claim falls under the MCL 445.904(1)(a) exemption, courts should consider whether the specific transaction or conduct at issue is authorized by law. *Smith* and *Liss* were wrongly decided because they inappropriately broadened the scope of the exemption, contrary to the plain language of the statute. Because the doctrine of stare decisis points toward their reversal, we overrule

2

*Smith* and *Liss*, reverse the decision of the Court of Appeals, vacate the circuit court's order, and remand to the circuit court for further proceedings, consistent with this opinion.

## I. BACKGROUND

### A. LEGAL BACKGROUND

The MCPA "was enacted to provide an enlarged remedy for consumers who are mulcted"—that is, defrauded—"by deceptive business practices." *Dix v American Bankers Life Assurance Co of Florida*, 429 Mich 410, 417; 415 NW2d 206 (1987). At its inception, the MCPA was one of the most powerful consumer-protection statutes in the United States.[1] The MCPA prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce," MCL 445.903(1), and it broadly defines "trade or commerce" as

> the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes and includes the advertising, solicitation, offering for sale or rent, sale, lease, or distribution of a service or property, tangible or intangible, real, personal, or mixed, or any other article, or a business opportunity. [MCL 445.902(1)(g).]

The MCPA also provides a long list of "[u]nfair, unconscionable, or deceptive methods, acts, or practices" prohibited under the act. MCL 445.903(1). Relevant to this case, the MCPA prohibits "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions," MCL 445.903(1)(i), and charging "a

---

[1] See Victor, *The Liability of Professionals, Insurance Companies and Other Regulated Industries Under the Michigan Consumer Protection Act*, 77 Mich B J 69, 69 (1998) ("A comparison of the MCPA with consumer-protection statutes in other states reveals Michigan's Act to be one of the broadest, all-encompassing consumer-protection statutes in the country.").

price that is grossly in excess of the price at which similar property or services are sold," MCL 445.903(1)(z).

To effectuate these protections, the MCPA provides two main methods of enforcement: private actions by consumers and actions by the AG. See MCL 445.911; MCL 445.905; MCL 445.910. The MCPA grants the AG subpoena power to investigate a potential violation upon a showing of probable cause. See MCL 445.907(1). The AG may pursue injunctive relief, civil fines, and/or a class action on behalf of consumers. See MCL 445.905(1); MCL 445.910(1).

Although the MCPA provides broad protections to consumers, those protections are not without limit. The MCPA contains numerous exemptions. See MCL 445.904. At issue in this case is the exemption for "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." MCL 445.904(1)(a).

We first discussed the MCL 445.904(1)(a) exemption in *Attorney General v Diamond Mtg Co*, 414 Mich 603; 327 NW2d 805 (1982). In *Diamond Mortgage*, the AG brought an action against a mortgage company, as well as its officers and directors, under the MCPA. See *id*. at 607. The defendants claimed that the MCL 445.904(1)(a) exemption applied because the mortgage company held a real estate broker's license, under which it was entitled to perform all acts of a real estate broker, including negotiating mortgages. See *id*. at 616. We rejected that argument and held that "[w]hile the license generally authorizes [the mortgage company] to engage in the activities of a real estate broker, it does not specifically authorize the conduct that plaintiff alleges is violative of the Michigan

4

Consumer Protection Act, nor transactions that result from that conduct." *Id*. at 617. We explained:

> In so concluding, we disagree that the exemption of [MCL 445.904(1)] becomes meaningless. While defendants are correct in stating that no statute or regulatory agency specifically authorizes misrepresentations or false promises, the exemption will nevertheless apply where a party seeks to attach such labels to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States". For this case, we need only decide that a real estate broker's license is not specific authority for all the conduct and transactions of the licensee's business. [*Id*.]

We next discussed the scope of the MCL 445.904(1)(a) exemption in *Smith*, 460 Mich at 462-467. In *Smith*, the plaintiff's deceased father had a life insurance policy, issued by the defendant. *Id*. at 450. After the plaintiff's father's death, the defendant denied coverage, claiming that the policy was void because the decedent had misrepresented his health on his application for insurance. *Id*. at 451. The plaintiff filed suit, claiming breach of contract and alleging that the defendant violated the MCPA by misrepresenting the advantages, benefits, terms, and conditions of the policy. *Id*.

The defendant argued that because "its application and certificate of insurance forms were submitted to and implicitly approved by the State Commissioner of Insurance," "the immediate transaction, the sale of credit life insurance, was 'specifically authorized' and, therefore, was exempted under" MCL 445.904(1)(a). *Id*. at 462-463. The plaintiff disagreed, arguing that the alleged fraudulent insurance practices were not specifically authorized by law. *Id*. at 463.

This Court, taking a sharp detour from *Diamond Mortgage*, held that "the relevant inquiry is not whether the specific misconduct alleged by the plaintiffs is 'specifically

5

authorized.' Rather, it is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." *Id*. at 465. We reasoned that MCL 445.904(1)(a) "generally exempts the sale of credit life insurance from the provisions of the MCPA, because such 'transaction or conduct' is 'specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States.' " *Id*.

Justice MICHAEL F. CAVANAGH dissented, stating that he would have followed *Diamond Mortgage* and that courts should consider the specific transaction or conduct, as opposed to the general transaction, at issue. *Smith*, 460 Mich at 481 (M. F. CAVANAGH, J., dissenting). Justice CAVANAGH emphasized that "general transactions or conduct subject to licensing are not necessarily exempt from the MCPA" and that being "subject to regulation" is not the same as an action being "specifically authorized." *Id*. Justice CAVANAGH noted that the majority's broad interpretation of the MCPA's exemption set forth in MCL 445.904(1)(a) would result in all MCPA claims being effectively blocked since most businesses that involve the sale of personal, family, and household goods or services—the practices regulated by the MCPA—have licenses or regulations authorizing their existence and general transactions. *Id*. at 480-481.

This Court again expanded the scope of the MCL 445.904(1)(a) exemption in *Liss*. There, the parties contracted for the sale and construction of a residential home. *Liss*, 478 Mich at 206. The plaintiffs alleged that the defendants "did not complete construction on time and that the construction that was completed was not done in a workman-like manner." *Id*. at 206-207. The plaintiffs sought relief under the MCPA. *Id*. at 207. This Court explained and clarified *Smith*, stating:

6

Applying the *Smith* test, the relevant inquiry is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited. This Court has not construed the meaning of "specifically authorized" under the MCPA. "Specific" means "having a special application, bearing, or reference; explicit or definite." "Authorize" means "to give authority or formal permission for; sanction." Thus, the exception requires a general transaction that is "explicitly sanctioned." [*Liss*, 478 Mich at 212-213 (quotation marks and citations omitted).]

This Court held that the MCL 445.904(1)(a) exemption "applies to residential home builders who engage in the type of activities that define a residential home builder, which activities are permitted by [Michigan's Occupational Code, MCL 339.101 *et seq*.,] to be performed only by licensed residential home builders." *Id*. at 215. In short, as long as a builder is licensed to act as a residential home builder, any claim related to the "general transaction" of residential home building is exempt from the MCPA. See *id*.

It is against this backdrop that we consider the facts of this case.

## B. FACTUAL AND PROCEDURAL BACKGROUND

In January 2022, the AG initiated this case by filing a petition for civil investigative subpoenas in the circuit court, requesting authorization to issue subpoenas related to an investigation into Eli Lilly's practices in pricing analog insulin products. The AG alleged that Eli Lilly artificially increased the list prices of insulin medications, in violation of the MCPA. Specifically, the AG argued that there was probable cause to believe that Eli Lilly violated MCL 445.903(1)(z) based on the disparity in pricing between its insulin products sold in Michigan and its products sold in other countries, and based on the disparity in pricing between Eli Lilly's branded drug, Humalog, and its generic version, Lispro.

7

Further, the AG argued that there was probable cause to believe that Eli Lilly violated MCL 445.903(1)(i) by making false representations in its promotion of Lispro.[2]

Simultaneously, the AG filed a complaint for declaratory relief under MCR 2.605, seeking a declaration that the MCPA applied to the conduct the AG sought to investigate. The AG argued that the MCL 445.904(1)(a) exemption did not apply in this case and that *Smith* and *Liss* were wrongly decided. The AG's complaint for declaratory relief did not include any separate cause of action under the MCPA. The AG explained that it was preferable to resolve at the inception of the investigation whether the MCL 445.904(1)(a) exemption applied, rather than to proceed with issuing subpoenas and have Eli Lilly later raise *Smith* and *Liss* as a defense.

The circuit court issued an order concluding that probable cause existed to believe that Eli Lilly violated the MCPA. The order authorized the AG to issue civil investigative subpoenas. But the AG did not immediately issue the subpoenas. Eli Lilly moved to stay the proceedings, including the issuance of subpoenas, pending resolution of the AG's

---

[2] To support her petition for investigatory subpoenas, the AG provided a detailed explanation of what her office sought to investigate and why. The AG argued that there was probable cause to believe that Eli Lilly's established list prices for its insulin medications grossly exceeded the price of the same medications sold in other countries. To support this assertion, the AG provided data from a telephonic survey, conducted by the AG's office, that compared the costs of insulin medications sold at Michigan pharmacies with the cost of the same medications sold at pharmacies in Ontario, Canada. The AG also alleged that probable cause arose through Eli Lilly's sale and marketing of its authorized generic drug, Lispro. The AG argued that Eli Lilly's branded drug, Humalog, was sold at a price grossly in excess of the chemically identical Lispro. The AG contended that the availability of Lispro under health insurance plans was determined, in part, through Eli Lilly's negotiations with pharmacy benefit managers (PBMs). Through subpoenas, the AG seeks to investigate the extent to which Eli Lilly sought to negotiate the inclusion of Lispro in the plans of PBMs.

8

complaint for declaratory relief. Eli Lilly's motion to stay essentially served the same purpose as a motion to quash the subpoenas. Eli Lilly argued that it would create an unnecessary burden if the subpoenas were issued before the dispositive question in the case, the applicability of the MCPA, was resolved.[3] Eli Lilly also moved for summary disposition under MCR 2.116(C)(8) (failure to state a claim on which relief can be granted), arguing that the sale of pharmaceuticals was a regulated activity and thus exempt from the MCPA under MCL 445.904(1)(a), citing *Smith* and *Liss*.

In a stipulated order, Eli Lilly agreed to withdraw its pending motion to stay without prejudice, and the AG agreed to refrain from issuing subpoenas until the declaratory-judgment action resulted in a decision permitting the AG to proceed with her investigation or another event took place making issuance of subpoenas appropriate.[4] The AG filed a cross-motion for summary disposition under MCR 2.116(I)(1) (requiring the court to "render judgment without delay" if a party is entitled to judgment as a matter of law) and MCR 2.116(C)(9) (failure to state a defense), arguing that *Smith* and *Liss* were wrongly decided and that the MCL 445.904(1)(a) exemption should be narrowly construed.

---

[3] Specifically, Eli Lilly agreed with the AG that it would be a waste of resources for the AG to proceed with her investigation only to have "the courts confirm that the whole endeavor is ultra vires." Therefore, Eli Lilly requested that the circuit court "stay proceedings in the matter and allow the parties to litigate the dispositive legal question" already presented in the "declaratory judgment action—just as the Attorney General intended."

[4] Eli Lilly acknowledged in its answer to the AG's application for leave to appeal that, had the parties not stipulated to stay the proceedings, it most certainly would have moved to quash the subpoenas.

9

The circuit court granted summary disposition in favor of Eli Lilly, holding that the AG's MCPA claims were foreclosed by *Smith* and *Liss*. The circuit court dismissed the AG's complaint. The Court of Appeals affirmed, explaining that "it is not in dispute that [Eli Lilly] manufactures and sells drugs, including insulin, pursuant to licenses issued under Part 177 of the Public Health Code, MCL 333.17701 *et seq*. Clearly, then, under *Smith* and *Liss*, the [MCL 445.904(1)(a)] exemption applies." *Attorney General v Eli Lilly & Co*, unpublished per curiam opinion of the Court of Appeals, issued June 22, 2023 (Docket No. 362272), p 2. We granted leave to appeal, directing the parties to address:

> (1) whether the plaintiff adequately pled a claim that the defendant violated the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq*.; (2) whether it is necessary for the plaintiff to adequately plead a violation of the MCPA for a court to determine whether MCL 445.904(1)(a), an exemption to the MCPA, applies; (3) whether this Court's decisions in [*Smith* and *Liss*] correctly interpreted MCL 445.904(1)(a); and (4) if they were incorrectly decided, whether they should nonetheless be retained under principles of stare decisis, *Robinson v Detroit*, 462 Mich 439, 463-468[; 613 NW2d 307] (2000). [*Attorney General v Eli Lilly & Co*, ___ Mich ___; 18 NW3d 513 (2025).[5]]

## II. JUSTICIABILITY

As a threshold matter, Eli Lilly argues that this Court cannot properly review this case because the AG has not pleaded a legally viable MCPA violation. We disagree. We hold that this case involves an actual, justiciable controversy, triggered by the circuit

---

[5] This Court initially ordered oral argument on the application for leave to appeal, directing the parties to file briefs addressing whether *Smith* and *Liss* were wrongly decided and whether stare decisis prevents this Court from overturning *Smith* and *Liss*. Following oral argument, this Court granted leave to appeal, directing the parties to brief two additional issues: (1) whether the AG adequately pleaded a claim that Eli Lilly violated the MCPA, and (2) whether it is necessary for the AG to adequately plead a violation of the MCPA for a court to determine whether MCL 445.904(1)(a) applies.

court's authorization of investigatory subpoenas. Although this case is in the investigatory stage of the proceedings, and the AG has not yet pleaded a substantive MCPA violation, this case involves a present legal controversy.

## A. STANDARDS OF REVIEW

"This Court reviews de novo a trial court's decision on a motion for summary disposition in an action for a declaratory judgment." *Lansing Sch Ed Ass'n, MEA/NEA v Lansing Bd of Ed (On Remand)*, 293 Mich App 506, 512-513; 810 NW2d 95 (2011). This Court also reviews de novo questions of law and questions concerning justiciability. See *League of Women Voters of Mich v Secretary of State*, 506 Mich 561, 574; 957 NW2d 731 (2020).

## B. ADEQUATE PLEADING

We first consider whether the AG adequately pleaded a claim that Eli Lilly violated the MCPA. As noted earlier, "[t]he MCPA prohibits the use of unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." *Zine v Chrysler Corp*, 236 Mich App 261, 270-271; 600 NW2d 384 (1999). MCL 445.907(1) describes the process by which the AG can petition the circuit court to authorize an investigation into an alleged MCPA violation:

> Upon the ex parte application of the attorney general to the circuit court in the county where the defendant is established or conducts business or, if the defendant is not established in this state, in Ingham county, the circuit court, if it finds probable cause to believe a person has engaged, is engaging, or is about to engage in a method, act, or practice which is unlawful under this act, may, after an ex parte hearing, issue a subpoena compelling a person to appear before the attorney general and answer under oath questions relating to an alleged violation of this act.

11

In January 2022, the AG filed a petition requesting that the circuit court authorize civil investigative subpoenas on the basis of suspected violations of MCL 445.903(1)(z) and MCL 445.903(1)(i). The circuit court found probable cause, which authorized the AG to serve investigative subpoenas on Eli Lilly or others. The circuit court's probable-cause finding is not being challenged on appeal. Both parties have agreed to a stay of proceedings, effectively pausing the issuance of subpoenas and any challenge to them. On appeal to this Court, the AG concedes, and we agree, that the petition for civil investigative subpoenas is not a "pleading." "[A] 'pleading' means only a complaint, a cross-claim, a counterclaim, a third-party complaint, an answer to one of those four types of pleading, and a reply to an answer." *Bechtold v Morris*, 443 Mich 105, 107 n 4; 503 NW2d 654 (1993), citing MCR 2.110(A). "No other form of pleading is allowed." MCR 2.110(A).

Petitions for civil investigative subpoenas are not required to state a claim under MCR 2.111(B)(1), nor are they subject to attack for failure to state a claim under MCR 2.116(C)(8). Instead, the purpose of the investigative stage is to explore and provide context for subsequent claims when probable cause exists. See *Cavalry SPV I, LLC v Morrisey*, 232 W Va 325, 335; 752 SE2d 356 (2013) ("[T]he purpose of an investigative subpoena is precisely as its name implies: to investigate. Such an investigation is designed to ascertain whether a violation of [law] has, in fact, occurred so as to permit the filing of an enforcement proceeding against the alleged offender."). The circuit court found probable cause and authorized investigatory subpoenas, based on allegations that Eli Lilly had possibly violated the MCPA through its insulin pricing practices. But the AG's request for subpoenas is not, in and of itself, an MCPA enforcement action. The only pleading

12

filed in this case was the AG's complaint for declaratory relief, filed on the same day as the petition.

## C. DECLARATORY RELIEF

Having concluded that the AG has not yet pleaded an MCPA violation, we turn to the question of whether the AG was required to plead an MCPA violation for the court to determine whether MCL 445.904(1)(a) applies. In other words, did the AG have to file a complaint alleging an MCPA violation for the court to address her request for declaratory relief? Under the facts of this case, we hold that the AG did not have to first bring a separate claim alleging an MCPA violation for the applicability of MCL 445.904(1)(a) to be litigated. In the simplest terms, a circuit court may grant declaratory relief when there is an actual case or controversy. See *Lansing Sch Ed Ass'n*, 293 Mich App at 515.

So, we ask whether a case or controversy exists with regard to the AG's complaint that solely seeks declaratory relief. Under the circumstances, it does. The only reason this case presents a question of whether a case or controversy exists is because the parties agreed to stay the proceedings and the AG has chosen not to serve the subpoenas that the circuit court already authorized. Put differently, the posture of this case (i.e., the stipulated stay of proceedings) does not change the fact that a live controversy exists just beneath the surface.

"In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted." MCR 2.605(A)(1). "The existence of an 'actual controversy' is a condition precedent to the invocation of

13

declaratory relief. In the absence of an actual controversy, the trial court lacks subject-matter jurisdiction to enter a declaratory judgment." *Lansing Sch Ed Ass'n*, 293 Mich App at 515 (quotation marks and citations omitted).

"Claims for declaratory relief necessarily derive from claims for substantive relief because declaratory relief lies only in cases of 'actual controversy,' and not merely for abstract declarations of rights divorced from a factual context." *Taxpayers Allied for Constitutional Taxation v Wayne Co*, 450 Mich 119, 128; 537 NW2d 596 (1995) (citation omitted). "Though a court is not precluded from reaching issues before actual injuries or losses have occurred, there still must be a present legal controversy, not one that is merely hypothetical or anticipated in the future." *League of Women Voters of Mich*, 506 Mich at 586 (quotation marks and citation omitted). "A plaintiff must plead and prove facts that indicate an adverse interest necessitating a sharpening of the issues raised." *Mercurio v Huntington Nat'l Bank*, 347 Mich App 662, 675; 16 NW3d 748 (2023).

> Declaratory judgment has been heralded as one of the most significant procedural reforms of the century. Its purpose is to enable parties, in appropriate circumstances of actual controversy, to obtain an adjudication of their rights before actual injury occurs, to settle matters before they ripen into violations of law or a breach of contractual duty, to avoid a multiplicity of actions by affording a remedy for declaring in one expedient action the rights and obligation of all litigants, or to avoid the strictures associated with obtaining coercive relief, when coercive relief is neither desired nor necessary to resolve the matter. [*Lansing Sch Ed Ass'n*, 293 Mich App at 515-516 (quotation marks and citations omitted).]

In short, "declaratory relief is designed to give litigants access to courts to preliminarily determine their rights. An actual controversy may exist where declaratory relief is needed to guide a plaintiff's future conduct, and the court is not precluded from reaching issues

14

before actual injuries or losses have occurred." *Detroit v Michigan*, 262 Mich App 542, 550-551; 686 NW2d 514 (2004) (quotation marks and citations omitted).

In *League of Women Voters of Michigan*, the plaintiffs requested a declaratory judgment that certain amendments to the Michigan Election Law were unconstitutional. *League of Women Voters of Mich*, 506 Mich at 572. This Court rejected the plaintiffs' request, explaining:

> [Plaintiffs] cannot show a present legal controversy rather than a hypothetical or anticipated one. A declaratory judgment is not *needed* to guide plaintiffs' future conduct. Plaintiffs only ask for a declaratory judgment because it perhaps may be needed in the future should they decide to sign some initiative. They have no plans now to sign any. Therefore, because plaintiffs do not meet the requirements of MCR 2.605, they do not have standing. [*Id*. at 586-587.]

Here, the AG requested that the circuit court grant a declaratory judgment that (1) the MCPA applies to the conduct alleged in the AG's petition for investigative subpoenas, and (2) the MCL 445.904(1)(a) exemption is inapplicable in the context of this case.[6] The

_____

[6] We observe that although the parties agree on the current state of the law, they disagree on its correctness and the implications that our stare decisis doctrine holds for its continued validity. Both Eli Lilly and the AG recognize that *Smith* and *Liss* are binding precedent. Under *Smith* and *Liss*, when determining whether conduct or transactions are exempt from the MCPA, the relevant inquiry is "whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." *Smith*, 460 Mich at 465. Eli Lilly is authorized, under state and federal law, to engage in the general transaction of selling insulin.

In the AG's cross-motion for summary disposition, she acknowledged that the circuit court was bound to follow *Smith*'s and *Liss*'s broad interpretation of MCL 445.904(1)(a). The AG asked that the circuit court note the ways through which the Michigan Supreme Court could remedy the issue. The AG also argued that both *Smith* and *Liss* were wrongly decided. The AG stated that she intended to bring this case to the Michigan Supreme Court to seek further relief. On appeal to this Court, the AG concedes that *Smith* and *Liss* exempt Eli Lilly from MCPA liability related to insulin pricing. But

15

AG filed her complaint seeking declaratory relief contemporaneously with her petition for authorization of investigatory subpoenas. Unlike the plaintiffs in *League of Women Voters*, the AG has imminent plans to legally demand documents and testimony related to suspected MCPA violations; the circuit court has already authorized the AG to issue subpoenas. And Eli Lilly contests the AG's authority to proceed with her investigation. Thus, this is not a hypothetical legal controversy. Rather, declaratory relief is necessary to guide the parties' future conduct—whether to serve the subpoenas, whether to move to quash the subpoenas, whether an MCPA violation may be alleged in good faith before incurring the expense of additional litigation. Under these particular circumstances, then, the AG did not need to first allege an MCPA violation through an enforcement action for a court to address the AG's request for declaratory relief, which is predicated upon the pre-enforcement petition for civil investigative subpoenas under MCL 445.907(1). The action here demonstrates why declaratory actions exist: they allow litigants to resolve dispositive issues at the outset.[7]

Consider the next steps in this proceeding if the parties had *not* stipulated to stay the issuance of investigatory subpoenas. Had the AG instead filed an MCPA enforcement

the AG does not concede the lack of a substantive MCPA violation. The parties contest the proper interpretation of MCL 445.904(1)(a) and whether the trial court's probable-cause finding is rendered moot by the exemption.

[7] It is not unprecedented for this Court to overrule past decisions in cases arising out of requests for declaratory relief. See *City of Coldwater v Consumers Energy Co*, 500 Mich 158; 895 NW2d 154 (2017) (considering the proper interpretation of Mich Admin Code, R 460.3411, and overruling *Great Wolf Lodge of Traverse City, LLC v Pub Serv Comm*, 489 Mich 27; 799 NW2d 155 (2011), in consolidated appeals arising out of two complaints for declaratory relief).

action, and had Eli Lilly sought to have the action summarily dismissed on the basis of MCL 445.904(1)(a), this Court undoubtedly would have been able to review the applicability of MCL 445.904(1)(a) without first reviewing the merits of the MCPA violation allegations. Similarly, if, after the circuit court found probable cause authorizing the investigation, the AG had requested subpoenas and served them on Eli Lilly, and Eli Lilly moved to quash the subpoenas on the basis of MCL 445.904(1)(a), this Court could have reviewed the applicability of MCL 445.904(1)(a). In either of these situations, this Court would have had the authority to address both the proper interpretation of MCL 445.904(1)(a) and the continued viability of *Smith* and *Liss*. The parties' stipulation— which was entered into for the sole purpose of resolving these same legal questions before the parties proceeded further—neither erases the underlying controversy nor renders it a merely hypothetical dispute. In other words, the issuance and enforcement of subpoenas is the "actual case." The joint stay is the only point that makes this active case appear to be hypothetical. But it is not.[8]

Instead of requiring the parties to ping-pong back to the circuit court just to file additional motions that bring the very same issues back to this Court, we conclude that there is an active case or controversy. That controversy is the pending investigative subpoenas and their enforcement, under MCL 445.907(1), held in abeyance only by the parties' joint stipulation. As Eli Lilly aptly explained in its motion to stay, resolving the

---

[8] To be clear, nothing in this opinion should be read as saying that the actual-controversy requirement may be waived. These hypothetical scenarios highlight how the parties' joint stipulation masks the live controversy present in this case. Under the circumstances of this case, there is an actual controversy, predicated on the issuance and enforcement of civil investigatory subpoenas.

17

"dispositive legal question of the MCPA's scope" through the AG's declaratory-judgment action "will help avoid duplicative proceedings; unnecessary burdens on the parties, third parties, and Court; and the potential need to litigate other defenses and objections." See MCR 1.105 ("These rules are to be construed, administered, and employed by the parties and the court to secure the just, speedy, and economical determination of every action . . . ."). Under the facts of this case, the declaratory action can proceed. The AG was not required to adequately plead a violation of the MCPA for a court to determine whether MCL 445.904(1)(a) applies in this case.[9]

---

[9] The dissent devotes considerable discussion to whether the AG has demonstrated that Eli Lilly engaged in "[u]nfair, unconscionable, or deceptive methods, acts, or practices," MCL 445.903(1), in violation of the MCPA. This discussion is premature. The circuit court found that there was *probable cause* to believe that Eli Lilly violated the MCPA and authorized the AG to issue investigatory subpoenas related to the AG's allegations. See MCL 445.907(1). This probable-cause finding is not at issue on appeal. This Court cannot address the merits of the AG's allegations because the AG has not yet pleaded a claim that Eli Lilly violated the MCPA. This case is still in the investigatory stage.

We agree with the dissent that the AG has not pleaded a substantive MCPA violation. However, we disagree on whether this case can go forward, despite the fact that the AG has not filed a complaint alleging that Eli Lilly violated the MCPA. The dissent seems to improperly conflate the lack of a complaint pleading a substantive MCPA violation with the lack of a cause of action in its entirety. We acknowledge that the only pleading filed in this case is the AG's complaint for declaratory relief. The focus of our justiciability analysis is not on whether the AG adequately pleaded a claim that Eli Lilly violated the MCPA. Instead, our justiciability analysis is centered on whether the AG met the requirements of MCR 2.605 and thus has standing to seek declaratory relief. See *Lansing Sch Ed Ass'n*, 487 Mich at 372. Here, for reasons discussed in this opinion, the AG has standing to seek declaratory relief because this case involves an actual case or controversy. See MCR 2.605.

## III.  MCL 445.904(1)(a)

Because we hold that the AG's declaratory action can proceed, we now turn to the substantive issue in this case—the proper interpretation of MCL 445.904(1)(a).  The AG argues that this Court's broad interpretation of the MCL 445.904(1)(a) exemption in *Smith* and *Liss* is incorrect.  We agree.  We hold that *Smith* and *Liss* were wrongly decided because they improperly broadened the scope of the exemption, contrary to the plain language, structure, and purpose of the statute.  And following our stare decisis principles, we overrule *Smith* and *Liss*.  We hold that the MCL 445.904(1)(a) exemption should be applied narrowly in cases where the specific transaction or conduct at issue is authorized by law.

### A.  STANDARDS OF REVIEW

"This Court reviews a motion for summary disposition de novo." *McCormick v Carrier*, 487 Mich 180, 188; 795 NW2d 517 (2010).  "Issues of statutory interpretation are questions of law that this Court reviews de novo." *Spectrum Health Hosp v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 515; 821 NW2d 117 (2012).

### B.  *SMITH* AND *LISS* WERE WRONGLY DECIDED

"The primary goal of statutory interpretation is to ascertain the legislative intent that may reasonably be inferred from the statutory language." *Krohn v Home-Owners Ins Co*, 490 Mich 145, 156; 802 NW2d 281 (2011) (quotation marks and citation omitted).  "This Court begins by reviewing the language of the statute, and, if the language is clear and unambiguous, it is presumed that the Legislature intended the meaning expressed in the

19

statute. Judicial construction of an unambiguous statute is neither required nor permitted." *McCormick*, 487 Mich at 191-192.[10]

At issue is the proper interpretation of the MCPA exemption found in MCL 445.904(1)(a). Under this exemption, the MCPA does not apply to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." MCL 445.904(1)(a). The language of MCL 445.904(1)(a) is unambiguous. The statute refers to "[a] transaction," in the singular. Based on the plain language of the statute, MCL 445.904(1)(a) was intended to be a narrow exemption, forbidding plaintiffs from bringing MCPA claims involving transactions or conduct that defendants are specifically authorized by law to do. See *Diamond Mtg Co*, 414 Mich at 616-618. *Smith* and *Liss* incorrectly interpreted MCL 445.904(1)(a) for two key reasons: (1) *Smith* and *Liss* improperly inserted the word "general" into the statute, and (2) *Smith* and *Liss* wrote the phrase "specifically authorized" out of the statutory language.

In *Smith*, this Court characterized MCL 445.904(1)(a) as a "broad exemption" to the protections of the MCPA. *Smith*, 460 Mich at 466. Under *Smith*, when determining whether the MCL 445.904(1)(a) exemption applies, "the relevant inquiry is not whether

---

[10] The MCPA is a remedial statute. See *Dix*, 429 Mich at 417. A statute is remedial in nature when it "is designed to correct an existing oversight in the law, redress an existing grievance, introduce regulations conducive to the public good, or is intended to reform or extend existing rights." *Nelson v Assoc Fin Servs Co of Indiana, Inc*, 253 Mich App 580, 590; 659 NW2d 635 (2002); see also *Rookledge v Garwood*, 340 Mich 444, 453; 65 NW2d 785 (1954). Remedial statutes "are to be liberally construed in favor of the persons intended to be benefitted." *Nelson*, 253 Mich App at 590. In this case, the MCPA should be construed liberally to broaden the consumers' remedy. See *Dix*, 429 Mich at 417-418.

20

the specific misconduct alleged by the plaintiffs is 'specifically authorized.' Rather, it is whether the *general transaction* is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." *Id*. at 465 (emphasis added). *Liss* reinforced *Smith*'s holding, stating that the MCL 445.904(1)(a) exemption "requires a *general* transaction that is 'explicitly sanctioned.' " *Liss*, 478 Mich at 213 (emphasis added).

*Smith* and *Liss* transformed the phrase "[a] transaction" into the phrase "general transaction." The word "general" does not appear anywhere in the text of MCL 445.904(1)(a). This Court "avoid[s] inserting words in statutes unless necessary to give intelligible meaning or to prevent absurdity." *Empire Iron Mining Partnership v Orhanen*, 455 Mich 410, 424; 565 NW2d 844 (1997). It was unnecessary to add language into MCL 445.904(1)(a) because the statutory language refers to a singular transaction. Therefore, by inserting the word "general" into the statutory language, *Smith* and *Liss* broadened the MCL 445.904(1)(a) exemption in a manner that was contrary to legislative intent. This exceeded the judiciary's duty to interpret statutory law as written, not make it.

Eli Lilly argues that *Smith*'s and *Liss*'s holdings are justified because the word "transaction" is necessarily broader than the word "conduct." According to Eli Lilly, a narrow reading of MCL 445.904(1)(a) would render the word "conduct" in the statute nugatory. We disagree. *Merriam-Webster's Collegiate Dictionary* (11th ed) defines "transaction" as "something transacted," meaning the "exchange or transfer of goods, services, or funds," or "an act, process, or instance of transacting[.]" See also *Lebenbom v UBS Fin Servs, Inc*, 326 Mich App 200, 213-214; 926 NW2d 865 (2018). "Conduct" is defined as "the act, manner, or process of carrying on[.]" *Merriam-Webster's Collegiate Dictionary* (11th ed). By its definition, a "transaction" can be a singular act or instance.

21

The term "conduct" differs from the word "transaction," not because "transaction" is the broader term, but because "transaction" indicates that an exchange or transfer took place.

The distinction between these two terms is borne out by the MCPA itself. Some provisions of the MCPA involve transactions. For example, the MCPA prohibits "[e]ntering into a consumer transaction in which the consumer waives or purports to waive a right, benefit, or immunity provided by law, unless the waiver is clearly stated and the consumer has specifically consented to it." MCL 445.903(1)(t). The MCPA also prohibits price gouging, which can occur only in connection with a transaction. See MCL 445.903(1)(z) (prohibiting "[c]harging the consumer a price that is grossly in excess of the price at which similar property or services are sold"). But other provisions of the MCPA dictate only the *conduct* of entities, outside the context of consumer *transactions*. For example, the MCPA prohibits "[d]isparaging the goods, services, business, or reputation of another by false or misleading representation of fact." MCL 445.903(1)(f). No transaction (i.e., sale) is required to show that disparagement. The MCPA further bars deceptive advertising, MCL 445.903(1)(g), which necessarily occurs before a transaction can occur (if a transaction occurs at all). Advertising is not a "transaction" under the ordinary meaning of the word; rather, it is "conduct" that a business engages in regardless of whether any "transaction" later occurs. "Conduct" therefore reaches certain activity before or after a "transaction" is executed—or deceptive activity that occurs even in the absence of a transaction. Thus, the terms "transaction" and "conduct" in MCL 445.904(1)(a) ensure that any such activity otherwise subject to MCPA liability but specifically authorized elsewhere still falls within the MCL 445.904(1)(a) exemption. By inserting the word "general" into the statutory language, *Smith* and *Liss* changed the

22

meaning of the exemption in a way that is contrary to the statute's text—and ultimately its purpose.

Further, *Smith*'s and *Liss*'s interpretation of MCL 445.904(1)(a) is at odds with legislative intent because *Smith* and *Liss* wrote the phrase "specifically authorized" out of the statutory language. "[C]ourts must interpret statutes in a way that gives effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory. A statute is rendered nugatory when an interpretation fails to give it meaning or effect." *Esurance Prop & Cas Ins Co v Mich Assigned Claims Plan*, 507 Mich 498, 508-509; 968 NW2d 482 (2021) (quotation marks and citations omitted).

*Smith* and *Liss* shift the focus of the analysis away from whether a transaction or conduct is "specifically authorized" by law. In *Smith*, this Court instructed that courts should not look at the specific act of alleged misconduct when determining the applicability of the MCL 445.904(1)(a) exemption. *Liss* took this holding even further by focusing its analysis on the licensure of or overall regulatory burden on the actor, rather than the actions of that actor. *Liss* held that the exemption applied "to residential home builders who engage in the type of activities that define a residential home builder, which activities are permitted by the [Michigan Occupational Code] to be performed only by licensed residential home builders." *Liss*, 478 Mich at 215. However, as noted in Justice MARILYN KELLY's dissent in *Liss*, "[t]he provisions of the Michigan Occupational Code that apply to residential home builders are devoid of any specific authorizations of transactions or conduct." *Id*. at 229 (MARILYN KELLY, J., dissenting). *Smith* and *Liss* do not require transactions or conduct to be "specifically authorized" in order for the exemption to apply. *Smith* and *Liss* instead

23

apply the exemption broadly to nearly all claims against regulated businesses and licensed entities (but, curiously, not unregulated or unlicensed entities).  See *Diamond Mtg*, 414 Mich at 616-617 (rejecting an interpretation of the exemption under which, in the plaintiff's words, " '[a] consumer could sue an unlicensed optician for deception, but not a licensed optometrist,' " and " '[a] consumer could sue a grocery store, but not a licensed car dealer or auto repair facility' ").  As a result, even unfair or deceptive actions are treated as general transactions authorized by law.

Since we decided *Smith* and *Liss*, a broad range of industries—regardless of the transaction or conduct in the specific case—have been judicially immunized from MCPA claims under the MCL 445.904(1)(a) exemption, demonstrating how these cases turned a narrow exception into broad immunity.  In addition to home builders, as in *Liss*, this includes car dealers,[11] car makers,[12] mortgage lenders and servicers,[13] real estate agents,[14]

---

[11] *Jimenez v Ford Motor Credit Co*, unpublished per curiam opinion of the Court of Appeals, issued December 22, 2015 (Docket No. 322909).

[12] *Cyr v Ford Motor Co*, unpublished per curiam opinion of the Court of Appeals, issued December 26, 2019 (Docket No. 345751).

[13] *Dingman v OneWest Bank, FSB*, 859 F Supp 2d 912 (ED Mich, 2012); *Molosky v Washington Mut, Inc*, 664 F3d 109 (CA 6, 2011).

[14] *Love v Ciccarelli*, unpublished per curiam opinion of the Court of Appeals, issued May 6, 2004 (Docket No. 243970).

plumbers,[15] doctors,[16] grocery stores,[17] casinos,[18] and pesticide application services.[19]  The rationale for each case's "specific authorization" varies; some parties are issued licenses by the state to conduct a certain kind of business; others are required to comply with regulations on their particular product or service.  These cases do not consider whether the conduct or transaction alleged is related to the licensure or regulation; the mere existence of the licensure or regulation is sufficient to immunize the defendant.  Neither the text nor the purpose of the MCPA supports such a result.  See *Dix*, 429 Mich at 417 (explaining that the MCPA "was enacted to provide an enlarged remedy for consumers who are mulcted [i.e., defrauded] by deceptive business practices").  See also *People v Arnold*, 502 Mich 438, 480 n 18; 918 NW2d 164 (2018) (noting that the Legislature "does not, one might say, hide elephants in mouseholes") (quotation marks and citation omitted).

Moreover, *Smith* and *Liss* render some sections of the MCPA completely nugatory. For example, under MCL 445.903(1)(dd)(*ii*), a business violates the MCPA where, "[f]or container holding devices regulated under part 163 of the natural resources and environmental protection act, 1994 PA 451, MCL 324.16301 to 324.16303," the business

---

[15] *Woods v Williams & Sons*, unpublished per curiam opinion of the Court of Appeals, issued January 23, 2007 (Docket No. 256394).

[16] *Lucas v Awaad*, 299 Mich App 345, 369; 830 NW2d 141 (2013).

[17] *Alexander v Del Monte Corp*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued January 11, 2011 (Case No. 09-12303).

[18] *Kraft v Detroit Entertainment, LLC*, 261 Mich App 534, 543; 683 NW2d 200 (2004).

[19] *Baumkel v Scotts Miracle-Gro Co*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued September 28, 2009 (Case No. 08-14137).

makes representations that a product is "degradable contrary to the definition provided in that act." It is difficult to conceive how any MCPA claim citing MCL 445.903(1)(dd)(*ii*) could survive under *Smith* and *Liss*, given that this subsection applies only to regulated devices.

Smith's and Liss's reading is also inconsistent with other provisions of the MCPA. For example, the MCPA provides for investigations, pursuant to the investigative subpoena provisions, for acts or practices in particular, heavily regulated industries. See MCL 445.917 (banking); MCL 445.918 (public utilities); MCL 445.919 (cemeteries); MCL 445.920 (securities); MCL 445.921 (insurance). If the Legislature had intended the mere existence of some other licensing or regulatory scheme to completely foreclose an MCPA action, it would not have directly enrolled the enforcers of those regulatory schemes in facilitating the MCPA. Neither *Smith* nor *Liss* addressed this incongruence.[20]

In sum, *Smith* and *Liss* were wrongly decided. *Smith*'s and *Liss*'s broad interpretation of the MCL 445.904(1)(a) exemption is at odds with the plain language of the statute and thus contradicts legislative intent. *Smith* and *Liss* essentially nullify all

---

[20] As another example, MCL 445.904(2) serves as a partial exemption "for an unfair, unconscionable, or deceptive method, act, or practice that is made unlawful" under a number of other laws, including acts governing banks, credit unions, and motor carriers. That subsection does, however, permit MCPA suits brought by private parties alleging such wrongdoing. MCL 445.904(2). It is unclear why the Legislature would carefully permit and limit MCPA liability with respect to various large, heavily regulated industries if the neighboring MCL 445.904(1)(a) were effectively a blanket exemption from MCPA liability for any regulated or licensed entity. The existence of MCL 445.904(2) thus further supports the conclusion that the broad interpretation adopted in *Smith* and *Liss* runs contrary to the MCPA's legislative scheme.

26

MCPA claims against swathes of industry sectors that would otherwise be subject to consumer-protection claims, contrary to the intent of the MCPA.

## C. PROPER INTERPRETATION OF MCL 445.904(1)(a)

Having determined that *Smith* and *Liss* were wrongly decided, we now turn to the proper interpretation of MCL 445.904(1)(a). As explained above, MCL 445.904(1)(a) was intended to be a narrow exemption. We hold that, when determining whether the MCL 445.904(1)(a) exemption applies, the proper inquiry is whether the specific transaction or conduct at issue, rather than the general transaction, is authorized by law. When applying the exemption, courts should first consider the specific transaction or conduct that the plaintiff alleges violates the MCPA. Then courts should determine whether that transaction or conduct is "specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." MCL 445.904(1)(a). This approach is consistent with our holding in *Diamond Mortgage* and the plain language of MCL 445.904(1)(a).

## D. STARE DECISIS

In concluding that *Smith* and *Liss* were wrongly decided and that a narrower construction is warranted under our principles of statutory interpretation, we have given serious consideration to the doctrine of stare decisis. See *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich 95, 132; 1 NW3d 44 (2023). Under this doctrine, "principles of law deliberately examined and decided by a court of competent jurisdiction should not be lightly departed." *McCormick*, 487 Mich at 209-210 (opinion by M. F. CAVANAGH, J.) (quotation marks and citation omitted). "Despite its importance, stare decisis is neither an inexorable command

nor a mechanical formula of adherence to the latest decision." *Id*. at 210 (quotation marks and citations omitted). "[T]here is a presumption in favor of upholding precedent, but this presumption may be rebutted if there is a special or compelling justification to overturn precedent." *Id*. at 211. "Stare decisis attempts to balance two competing considerations: the need of the community for stability in legal rules and decisions and the need of courts to correct past errors." *Petersen v Magna Corp*, 484 Mich 300, 314; 773 NW2d 564 (2009).

In addition to determining a case is wrongly decided, "courts should review whether the decision defies practical workability, whether reliance interests would work an undue hardship were the decision to be overruled, and whether changes in the law or facts no longer justify the decision." *City of Coldwater v Consumers Energy Co*, 500 Mich 158, 173; 895 NW2d 154 (2017), citing *Robinson*, 462 Mich at 464. Along with the *Robinson* factors, this Court has considered other criteria relevant when determining whether a case should be overruled, including "whether upholding the rule is likely to result in serious detriment prejudicial to public interests" and "whether the prior decision was an abrupt and largely unexplained departure from precedent." *McCormick*, 487 Mich at 211 (quotation marks and citation omitted). Reviewing these factors, we hold that stare decisis principles do not prevent this Court from overruling *Smith* and *Liss*.

## 1. PRACTICAL WORKABILITY

The first factor we consider is "whether the decision[s] at issue def[y] practical workability . . . ." *Robinson*, 462 Mich at 464 (quotation marks omitted). This factor "involves the reception of the decision by courts and parties and the ease of its application." *Ottgen v Katranji*, 511 Mich 223, 240; 999 NW2d 359 (2023). This factor weighs in favor

28

of overruling *Smith* and *Liss* because *Smith* and *Liss* have rendered much of the MCPA completely unworkable.

When the MCPA was adopted, it provided expansive protections to Michigan consumers from "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce . . . ." MCL 445.903(1). *Smith*'s and *Liss*'s incorrect statutory interpretation transformed MCL 445.904(1)(a) into an exemption so broad that it precludes most MCPA claims. After all, most businesses engaged in trade or commerce are subject to regulation and licensure.[21] The practical reality of *Smith* and *Liss* is that these businesses are now almost entirely exempt from liability under the MCPA, even when they engage in unfair, unconscionable, deceptive, or even illegal practices.[22]

The case at hand illustrates the unworkability of *Smith* and *Liss*. No drug may be marketed in the United States without approval from the Food and Drug Administration

---

[21] See footnotes 11 through 19 of this opinion.

[22] The result of *Smith*'s and *Liss*'s overreach is that Michigan's consumer protection law is rated, along with Rhode Island's, the worst in the entire country. See National Consumer Law Center (NCLC), *Consumer Protection in the States: A 50-State Report on Unfair and Deceptive Acts and Practices Statutes* (February 2009), p 13 (characterizing Michigan and Rhode Island as the "terrible two" with respect to consumer protections against unfair and deceptive practices), available at <https://www.nclc.org/wp-content/uploads/2022/08/report_50_states.pdf> (accessed July 26, 2026) [https://perma.cc/XF39-FLS5]. The NCLC report noted that the language of the MCPA is "relatively strong" but that judicial decisions have construed one of the exemptions so broadly that the MCPA has been left an "empty shell[]." *Id*. The NCLC reiterated in a 2018 report that the MCPA is "terrible" because it has "been gutted by court decisions that interpret the statute as being applicable to almost no consumer transactions." NCLC, *Consumer Protection in the States: A 50-State Report on Unfair and Deceptive Practices Laws* (March 2018), p 1, available at <https://www.nclc.org/wp-content/uploads/2022/09/UDAP_rpt.pdf> (accessed July 26, 2026) [https://perma.cc/4TE4-9BAK].

29

(FDA). See 21 USC 355(a). After a drug is FDA-approved, the FDA continues to regulate the safety and efficacy of the drug through postmarket regulatory procedures.[23] Additionally, the Michigan Board of Pharmacy "[r]egulate[s], control[s], and inspect[s] the character and standard . . . of drugs and devices manufactured, distributed, prescribed, dispensed, administered, or issued in this state . . . ." MCL 333.17722(a). Given the highly regulated nature of the pharmaceutical industry, plaintiffs are essentially precluded from bringing any MCPA claim against pharmaceutical manufacturers, under the interpretation of the exemption in *Smith* and *Liss*.

Other considerations that are relevant to practical workability "include whether the decision [has] been met with criticism, whether its application [has] been contested or difficult, and, in the context of statutory interpretation, whether a reader of the underlying statute would be unable to rely on its plain meaning in light of the decision's departure from that meaning." *Ottgen*, 511 Mich at 240. Regarding criticism, we note that neither *Smith* nor *Liss* was "joined by the full Court." See *id*. at 241. Instead, two justices dissented—in part or in whole, respectively—in both cases.

More importantly, with respect to those decisions' departure from the plain language of MCL 445.904(1)(a), it is "impossible for a reader to rely on the text of the statute[] without also combing through past judicial decisions." *Id*. at 242. So even if *Smith* and *Liss* are easy to apply, the significant interpretive gloss added by those cases— adding the word "general" to the statute, failing to give proper effect to the phrase

---

[23] See Congressional Research Service, *How FDA Approves Drugs and Regulates Their Safety and Effectiveness* (updated May 8, 2018), available at <https://www.congress.gov/crs_external_products/R/PDF/R41983/R41983.14.pdf> (accessed June 24, 2026).

"specifically authorized," and ignoring the history and structure of the MCPA—makes the law "less workable in the sense that it is made more confusing and less decipherable to the ordinary citizen." *Paige v Sterling Hts*, 476 Mich 495, 511; 720 NW2d 219 (2006). Because MCL 445.904(1)(a)'s operation as a blanket "regulated industries" exception is not at all evident from the plain language of the statute or the purported purview of the MCPA to protect consumers, *Smith* and *Liss* "def[y] practical workability because a person reading the statute surely would not know that he or she cannot rely on what the statute plainly says." *Id*. at 510.

## 2. RELIANCE

The next stare decisis factor we will consider is "whether reliance interests would work an undue hardship . . . ." *Robinson*, 462 Mich at 464. When assessing reliance interests, we "must ask whether the previous decision has become so embedded, so accepted, so fundamental, to everyone's expectations that to change it would produce not just readjustments, but practical real-world dislocations." *Id*. at 466. "Where overruling a decision would 'produce chaos,' the Court should not do so." *Kandil-Elsayed*, 512 Mich at 142, quoting *Robinson*, 462 Mich at 466 n 26. Reliance interests weigh in favor of overturning *Smith* and *Liss*.

While it is true that overturning *Smith* and *Liss* may open the door to increased litigation brought against businesses operating in Michigan, this is not a compelling reason to retain *Smith* and *Liss*. If Michigan businesses are relying on *Smith* and *Liss* to engage in unfair, unconscionable, or deceptive business practices otherwise prohibited by the MCPA without the fear of repercussion, this is not a valid reliance interest. See *Lansing*

31

*Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 370; 792 NW2d 686 (2010) (explaining

that violating the law "on the basis of the assumption it could not be challenged" is "not

the type of reliance interest[] that this Court seeks to protect").

Additionally, "it is well to recall in discussing reliance, when dealing with an area

of the law that is statutory . . . , that it is to the words of the statute itself that a citizen first

looks for guidance in directing his actions." *Robinson*, 462 Mich at 467. As we explained

in *Robinson*:

> This is the essence of the rule of law: to know in advance what the rules of
> society are. Thus, if the words of the statute are clear, the actor should be
> able to expect, that is, rely, that they will be carried out by all in society,
> including the courts. In fact, should a court confound those legitimate citizen
> expectations by misreading or misconstruing a statute, it is that court itself
> that has disrupted the reliance interest. When that happens, a subsequent
> court, rather than holding to the distorted reading because of the doctrine of
> stare decisis, should overrule the earlier court's misconstruction. The reason
> for this is that the court in distorting the statute was engaged in a form of
> judicial usurpation that runs counter to the bedrock principle of American
> constitutionalism, i.e., that the lawmaking power is reposed in the people as
> reflected in the work of the Legislature, and, absent a constitutional violation,
> the courts have no legitimacy in overruling or nullifying the people's
> representatives. Moreover, not only does such a compromising by a court of
> the citizen's ability to rely on a statute have no constitutional warrant, it can
> gain no higher pedigree as later courts repeat the error. [*Id*. at 467-468.]

That is the case here. In *Smith* and *Liss*, this Court departed from and distorted the

plain language of MCL 445.904(1)(a). *Smith* and *Liss* transformed the narrow statute into

a broad exemption, precluding a significant number of MCPA claims that would not be

exempt under a plain reading of the text. Michigan litigants are no longer able to rely on

the plain language of the statute when determining whether potential MCPA claims fall

under the exemption. By misconstruing a narrow exemption and ignoring the statute's

32

plain language and purpose, this Court has disrupted the reliance interest for consumer protections. It is this Court that should remedy its prior mistakes. See *Robinson*, 462 Mich at 467-468. Accordingly, the reliance factor does not support the retention of *Smith* and *Liss*.

### 3. CHANGES IN LAW OR RELEVANT FACTS

The final *Robinson* factor considers "whether changes in the law or facts no longer justify the questioned decision." *Robinson*, 462 Mich at 464. We discern no material change in the language of MCL 445.904(1)(a), nor have the parties pointed us to any factual developments that bear on the present question. Therefore, this factor does not support overruling *Smith* and *Liss*. However, given the significant interpretive issues with those cases and the lack of cognizable reliance interests associated with overruling them, we nevertheless hold that the totality of the *Robinson* factors supports overruling *Smith* and *Liss*. See *Stokes v Swofford*, 514 Mich 423, 452-455; 22 NW3d 97 (2024) (concluding that affirmative findings on two of the three factors justified overruling precedent).

### 4. OTHER STARE DECISIS CONSIDERATIONS

In *McCormick*, in addition to assessing practical workability and reliance, this Court evaluated "whether upholding the rule is likely to result in serious detriment prejudicial to public interests," and "whether the prior decision was an abrupt and largely unexplained departure from precedent." *McCormick*, 487 Mich at 211 (quotation marks omitted), citing *Petersen*, 484 Mich at 320. These factors provide additional and compelling justification for our decision to overrule *Smith* and *Liss*.

33

First, *Smith* and *Liss* seriously prejudice public interests. When the MCPA was enacted, it provided powerful protections by creating an "enlarged remedy" for Michigan consumers against unfair, unconscionable, and deceptive business practices. *Dix*, 429 Mich at 417. Public-policy interests weigh in favor of overruling *Smith* and *Liss* because *Smith* and *Liss* severely limit the ability to conduct state-specific consumer-protection enforcement. The cost of *Smith* and *Liss* borne by individual consumers is not easily quantified because *Smith* and *Liss* have a chilling effect. It can be presumed that, under *Smith* and *Liss*, many viable MCPA claims are either never brought at all or are dismissed at the outset of litigation through a grant of summary disposition under MCR 2.116(C)(8).

Second, *Smith* and *Liss* were a stark and inexplicable departure from this Court's holding in *Diamond Mortgage*. In *Diamond Mortgage*, this Court construed the MCL 445.904(1)(a) exemption narrowly, holding that although the defendant was generally licensed to perform the acts of a real estate broker, the MCL 445.904(1)(a) exemption did not apply because the defendant was not specifically authorized by law to perform the conduct that the plaintiff alleged violated the MCPA. See *Diamond Mtg Co*, 414 Mich at 617. *Smith* and *Liss* differ from *Diamond Mortgage* in their approach to the MCL 445.904(1)(a) exemption because *Smith* and *Liss* instruct that it is the general transaction, rather than the specific alleged misconduct, that is the focus of the analysis.

As Justice KELLY explained in her dissent in *Liss*:

> [T]he decisions in *Diamond Mortgage* and *Smith* cannot be squared. *Diamond Mortgage* asked whether the transaction or conduct alleged to be in violation of the MCPA is "specifically authorized" by another statute, and it created a narrow exception. *Smith* asked whether the general transactions of the industry are "specifically authorized," and it created a broad exemption . . . . [*Liss*, 478 Mich at 220 (MARILYN KELLY, J., dissenting).]

34

We conclude that *Diamond Mortgage*'s approach to the MCL 445.904(1)(a) exemption reflects the plain language of the statute. In contrast, *Smith*'s and *Liss*'s interpretation of MCL 445.904(1)(a) is largely inconsistent with the plain language of the statute. By broadening the scope of the MCL 445.904(1)(a) exemption to encompass general transactions, *Smith* essentially overruled *Diamond Mortgage*, without performing a stare decisis analysis.

## IV. CONCLUSION

The AG adequately pleaded a request for declaratory relief. An actual case or controversy exists because the AG petitioned for civil investigative subpoenas, requesting authorization from the circuit court to investigate Eli Lilly's insulin-pricing practices. The circuit court, finding probable cause to believe that Eli Lilly violated the MCPA, authorized the AG to issue subpoenas. Eli Lilly has not challenged this probable-cause finding. The fact that the parties stipulated to stay the proceedings does not negate the fact that there is a live controversy present in this case. Thus, although the AG has not pleaded a substantive MCPA violation, we are able to address whether *Smith* and *Liss* were correctly decided, through the AG's request for declaratory relief.

On the merits, we hold that *Smith* and *Liss* were wrongly decided and cannot stand under our stare decisis analysis. *Smith*'s and *Liss*'s interpretation of MCL 445.904(1)(a) is contrary to the plain language of the statute. We overrule *Smith* and *Liss* and "return the law, as is our duty, to what we believe the citizens of this state reading these statutes at the time of enactment" would have understood them to mean. *Robinson*, 462 Mich at 468. Accordingly, we reverse the decision of the Court of Appeals, vacate the circuit court order

35

granting summary disposition in favor of Eli Lilly, and remand to the Ingham Circuit Court for further proceedings. On remand, the circuit court must determine whether the particular transaction or conduct that the AG alleges violates the MCPA is specifically authorized by law. Only then would the MCL 445.904(1)(a) exemption apply.

<div style="margin-left: 40%;">

Noah P. Hood
Megan K. Cavanagh
Elizabeth M. Welch
Kimberly A. Thomas

</div>

ATTORNEY GENERAL,

      Plaintiff-Appellant,

v

      No. 165961

ELI LILLY AND COMPANY

      Defendant-Appellee.

_____

BOLDEN, J. (*dissenting*).

After twice reviewing briefing and hearing oral arguments in this case, I conclude that plaintiff, the Attorney General, does not have standing to litigate the complicated legal questions before us. Without standing, we are without an adequate basis to consider them. I respectfully dissent.

## I. RELEVANT PROCEDURAL POSTURE

Plaintiff filed this complaint against Eli Lilly and Company, seeking a declaratory judgment that plaintiff has the authority to investigate defendant's sales of insulin as potential violations of the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq*. After the complaint was filed, the parties filed cross-motions for summary disposition in which both parties agreed that this Court's decisions in *Smith v Globe Life Ins Co*, 460 Mich 446; 597 NW2d 28 (1999), and *Liss v Lewiston-Richards, Inc*, 478 Mich 203; 732 NW2d 514 (2007), compelled the trial court to grant defendant's motion. However, plaintiff argued that *Smith* and *Liss* incorrectly interpreted MCL 445.904(1)(a) and

frustrated the purpose of the MCPA.[1]  The trial court considered both motions and granted defendant's motion under MCR 2.116(C)(8).

Plaintiff appealed and filed a bypass application to this Court, which we denied. *Attorney General v Eli Lilly & Co*, 510 Mich 1121 (2022).  The Court of Appeals affirmed the trial court's decision.  *Attorney General v Eli Lilly & Co*, unpublished per curiam opinion of the Court of Appeals, issued June 22, 2023 (Docket No. 362272).  Plaintiff filed another application seeking leave to appeal from this Court, and we ordered oral argument on the application.  Specifically, we directed the parties to address

> (1) whether this Court's decisions in [*Smith* and *Liss*] were correctly decided; and (2) if not, whether they should nonetheless be retained under principles of stare decisis, *Robinson v City of Detroit*, 462 Mich 439, 463-468 (2000). [*Attorney General v Eli Lilly & Co*, 513 Mich 1003, 1003 (2024).]

After arguments were heard, we granted leave to appeal.  *Attorney General v Eli Lilly & Co*, ___ Mich ___; 18 NW3d 513 (2025).  In our grant order, we added questions about the adequacy of plaintiff's pleadings.  Specifically, we directed the parties to address

> (1) whether the plaintiff adequately pled a claim that the defendant violated the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq*.; (2) whether it is necessary for the plaintiff to adequately plead a violation of the MCPA for a court to determine whether MCL 445.904(1)(a), an exemption to the MCPA, applies; (3) whether this Court's decisions in [*Smith* and *Liss*] correctly interpreted MCL 445.904(1)(a); and (4) if they were incorrectly decided, whether they should nonetheless be retained under principles of stare decisis, *Robinson v City of Detroit*, 462 Mich 439, 463-468 (2000). [*Eli Lilly*, ___ Mich at ___; 18 NW3d at 513.]

---

[1] Because plaintiff believed that *Smith* and *Liss* precluded the authorization of investigative subpoenas, plaintiff waived the typical process for seeking those subpoenas under the MCPA and, instead, concurrently moved for summary disposition under MCR 2.116(C)(9) and MCR 2.116(I)(2).

2

## II. ANALYSIS

### A. STANDARD OF REVIEW

When appealed to our Court, grants and denials of summary disposition are reviewed de novo. *Carter v DTN Mgt Co*, 515 Mich 61, 73; 28 NW3d 291 (2024), citing *Ray v Swager*, 501 Mich 52, 61-62; 903 NW2d 366 (2017). Whether a party has standing is also a question of law that we review de novo. *Mich Ass'n of Home Builders v Troy*, 504 Mich 204, 212; 934 NW2d 713 (2019). So are questions requiring us to interpret statutes or court rules. *American Civil Liberties Union of Mich v Calhoun Co Sheriff's Office*, 509 Mich 1, 8; 983 NW2d 300 (2022) (interpreting statutes de novo); *CAM Constr v Lake Edgewood Condo Ass'n*, 465 Mich 549, 553; 640 NW2d 256 (2002) (interpreting court rules de novo). De novo review requires that we review the legal issues independently without deferring to the legal interpretations given by the lower courts. *Carter*, 515 Mich at 73.

A motion filed under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). All well-pled factual allegations must be accepted by the reviewing court as true and weighed in a light most favorable to the nonmoving party—here, plaintiff. *Id*., citing *Wade v Dep't of Corrections*, 439 Mich 158, 162; 483 NW2d 26 (1992). The motion may only be granted where the claims alleged are " 'so clearly unenforceable as a matter of law that no factual development could possibly justify recovery.' " *Maiden*, 461 Mich at 119, quoting *Wade*, 439 Mich at 163. The reviewing court may consider only the pleadings. *Maiden*, 461 Mich at 119-120, citing MCR 2.116(G)(5).

3

## B. PLAINTIFF HAS NOT PLED AN MCPA VIOLATION

The MCPA provides that "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful . . . ." MCL 445.903(1).[2] "Trade or commerce" means "the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes . . . ." MCL 445.902(1)(g). It exempts from its scope "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." MCL 445.904(1)(a).

Although plaintiff maintains that *Smith* and *Liss* erroneously interpreted the *exemption* to the MCPA articulated in MCL 445.904(1)(a), plaintiff has missed the first step of demonstrating that there was an actionable claim under the MCPA. Simply put, plaintiff has not pled any "unfair, unconscionable, or deceptive methods, acts, or practices" which could show that defendant has violated the MCPA. Whether and how the exemptions are interpreted are secondary questions to whether the MCPA itself was violated.

Plaintiff's allegations provide an overview of the prevalence of diabetes in the United States and in Michigan, the benefits of treating diabetes with insulin injections, defendant's production and marketing of insulin as a diabetes treatment, and the fact that the average cost of insulin is unaffordable to many individuals in Michigan and the United

---

[2] In full, the MCPA would appear to provide a thoroughly comprehensive definition of the scope of "[u]nfair, unconscionable, or deceptive methods, acts, or practices" by offering 37 subsections that define the scope of the act. See MCL 445.903(1)(a) through (*ll*). Plaintiff had several statutory opportunities to allege various violations of the MCPA but has not done so.

States, especially as compared to the costs of insulin in Canada and Germany. Plaintiff alleges that insulin prices are "more than eight times higher in the United States than in 32 high-income countries combined." Plaintiff also describes the process that drug manufacturers generally use to set prices and market insulin products. Plaintiff further discusses how pharmaceutical products are marketed and alleges that defendant is violating the MCPA because it is motivated to maintain the current pricing system in its present form.

Plaintiff has not shown that defendant has engaged in "unfair, unconscionable, or deceptive methods, acts, or practices," MCL 445.903(1), in "the conduct of *a business* providing goods, property, or service primarily for personal, family, or household purposes." MCL 445.902(1)(g) (emphasis added). Plaintiff has made a persuasive case that insulin products are expensive in the United States as compared to other nations and that the system of pharmaceutical production and marketing results in pharmaceutical prices that are harmful to Americans in need of insulin. However, plaintiff has not shown with any specificity that defendant has violated the MCPA. Most damaging to plaintiff's claim is plaintiff's inability to show the relative costs of defendant's insulin in Michigan.[3] Plaintiff generally addresses the costs of insulin and makes broad comparisons to other countries, suggesting that there may be an unfairness or price discrepancy in the

---

[3] Plaintiff attempted to demonstrate the relative cost of defendant's insulin by conducting a telephone survey of eight pharmacies—four each on a border crossing in Michigan and their analogs on a border crossing in Canada—to suggest that defendant's insulin is significantly more costly in Michigan than in Canada. These data fall short of persuasively demonstrating that defendant's role, if any, in setting these four pharmacies' prices was part of an "unfair, unconscionable, or deceptive" business practice.

pharmaceutical industry, but plaintiff has come short of demonstrating with any specificity how *defendant*'s business engaged in any unfair practices.

The majority finds it compelling that defendant's brand-name drug prices are more expensive than its generic drug prices. But the fact that a pharmaceutical manufacturer offers a cheaper bioequivalent substance for consumers to purchase is not a demonstrative allegation of something that is "unfair, unconscionable, or deceptive." See *Sorrell v IMS Health Inc*, 564 US 552, 558; 131 S Ct 2653; 180 L Ed 2d 544 (2011) (explaining that "[o]nce a brand-name drug's patent expires, less expensive bioequivalent generic alternatives are manufactured and sold"); *PLIVA, Inc v Mensing*, 564 US 604, 612-613; 131 S Ct 2567; 180 L Ed 2d 580 (2011) (explaining how generic drugs can be developed inexpensively by bypassing clinical trial testing while also demonstrating that they are safe and efficacious and meet "an ongoing federal duty of 'sameness' "). Generic drugs, thus, are required to be the same product offered as a brand-name product, but with an expectation that they should be sold at a lower cost. Having a lower-cost alternative made publicly available is not "unfair, unconscionable, or deceptive."

To the extent plaintiff argues that selling higher-priced brand-name drugs while also selling generic drugs with lower prices constitutes "[c]harging the consumer a price that is grossly in excess of the price at which similar property or services are sold" in violation of MCL 445.903(1)(z), this argument falls short. When interpreting statutes, our "goal 'is to discern and give effect to the Legislature's intent as expressed in the words of the statute.' " *Williamson v AAA of Mich*, 513 Mich 264, 270; 15 NW3d 546 (2024), quoting *Pohutski v Allen Park*, 465 Mich 675, 683; 641 NW2d 219 (2002). So, we "give the words of a statute their plain and ordinary meaning . . . ." *Pohutski*, 465 Mich at 683. The statute "must be

6

considered as a whole, 'reading individual words and phrases in the context of the entire legislative scheme.' " *Clam Lake Twp v Dep't of Licensing & Regulatory Affairs*, 500 Mich 362, 373; 902 NW2d 293 (2017) (citation omitted). "Additionally, when possible, we strive to avoid constructions that would render any part of the Legislature's work nugatory." *Jostock v Mayfield Twp*, 513 Mich 360, 372; 15 NW3d 552 (2024) (citation, quotation marks, and brackets omitted).

Even if it is suspicious that defendant offers both the higher-cost name-brand Humalog and the lower-cost generic Lispro, this Court has previously "decline[d] to adopt the straw-man/sham transaction doctrine" when the underlying statute "allow[ed] no such latitude." *People v Laney*, 470 Mich 267, 272-273; 680 NW2d 888 (2004). Here, the statute allows no latitude to support the proposition that the market price difference of these similar products alone is sufficient to support an allegation that defendant violated MCL 445.903(1)(z).[4] The statute considers charging different prices to be an "unfair, unconscionable, or deceptive" act when it involves "[c]harging the consumer" a "grossly . . . excess[ive]" price for something when compared to something similar. MCL 445.903(1)(z). Plaintiff has not alleged that defendant is charging the consumer a grossly excessive price—and could not, because defendant does not charge prices to consumers.

---

[4] The majority suggests that MCL 445.903(1)(i), which bars "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions," might also be implicated. However, we require plaintiffs to plead their cases with adequate specificity of fact, see MCR 2.111(B)(1), and the mere existence of higher-cost branded drugs and lower-cost generic alternatives alone would not appear to be either false or misleading. Had the Legislature intended this pricing system to constitute a "suspected violation" of the MCPA, it would have used that phrase here, as it has in other statutes. See, e.g., MCL 15.362.

Rather, defendant sets a suggested list price for its products, which are purchased by pharmaceutical retailers that then set the prices that are charged to consumers. Thus, construing plaintiff's pleadings as alleging violations of the MCPA would require us to render nugatory the "[c]harging the consumer" portion of the statute and instead hold that it is unfair, unconscionable, or deceptive to offer similar products with different suggested prices. This would strain plaintiff's pleadings and result in an impermissible statutory construction.[5]

Most importantly, plaintiff has conceded that no violation of the MCPA has been pled.[6] That alone should end our analysis.[7]

## C. WITHOUT PLEADING A VIOLATION OF THE MCPA, PLAINTIFF LACKS STANDING TO CHALLENGE HOW WE INTERPRET THE MCPA

"Standing" is a term that "generally refers to the right of a plaintiff initially to invoke the power of a trial court to adjudicate a claimed injury." *Saugatuck Dunes Coastal Alliance v Saugatuck Twp*, 509 Mich 561, 574; 983 NW2d 798 (2022) (citation and quotation marks omitted). Michigan's standing jurisprudence reflects a "limited,

---

[5] The majority's discussion of MCL 445.907(1)(z) in Part I(A) of its opinion omits the "[c]harging the consumer" portion of the full statutory text.

[6] Given the majority's explicit agreement that plaintiff has not pled a substantive MCPA violation, there appears to be uniform acceptance among all parties and all members of the Court that plaintiff has failed to allege a violation of the MCPA.

[7] The majority believes it is premature to consider whether plaintiff adequately pled a violation of the MCPA. But it is axiomatic that a plaintiff must assert a legal cause of action before we can reach the underlying legal issues. That this case is "still in the investigatory stage" merely signals an invitation to future parties that they may first seek to change the law that frustrates their litigation before they even understand whether they can adequately plead a legal claim with sufficient facts. This severely undercuts the "case of actual controversy" requirement. MCR 2.605(A)(1).

8

prudential doctrine[.]" *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010). "The purpose of the standing doctrine is to assess whether a litigant's interest in the issue is sufficient to 'ensure sincere and vigorous advocacy.' " *Id*. at 355, quoting *Detroit Fire Fighters Ass'n v Detroit*, 449 Mich 629, 633; 537 NW2d 436 (1995). Although our statewide standing doctrine has historically undergone various changes, *Lansing Sch Ed Ass'n* provides the current test we use to determine whether a plaintiff has standing to litigate a claim. See *Lansing Sch Ed Ass'n*, 487 Mich at 355-361, 372. Under this test,

> a litigant has standing whenever there is a legal cause of action. Further, whenever a litigant meets the requirements of MCR 2.605, it is sufficient to establish standing to seek a declaratory judgment. Where a cause of action is not provided at law, then a court should, in its discretion, determine whether a litigant has standing. A litigant may have standing in this context if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant. [*Id*. at 372.]

Here, the question is whether plaintiff has standing to seek a declaratory judgment. Plaintiff must meet the requirements of MCR 2.605 to have standing. *Id*.

"In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted." MCR 2.605(A)(1). "For the purpose of this rule, an action is considered within the jurisdiction of a court if the court would have jurisdiction of an action on the same claim or claims in which the plaintiff sought relief other than a declaratory judgment." MCR 2.605(A)(2). Plaintiff provides a few reasons why these requirements have been met; none should provide a basis for relief.

9

First, plaintiff notes that an ex parte application for investigative authority only requires plaintiff to establish probable cause to believe that a party has engaged in unlawful conduct under the MCPA and that plaintiff may then compel production of evidence relating to an alleged violation of the MCPA. MCL 445.907(1). Plaintiff argues that given this context and its investigative nature, an MCPA violation does not need to be pled for there to be a "case of actual controversy" for purposes of a declaratory-judgment action. MCR 2.605(A)(1). But this is a circular argument that we cannot square. Plaintiff does not argue that the burden of proof in the investigative context is somehow lesser because of the probable-cause requirement in MCL 445.907. Instead, plaintiff argues that MCL 445.907 means that only probable cause to believe that a party is engaged in unlawful conduct must be shown in order to establish the actual-controversy requirement, instead of having to plead an MCPA violation.[8] But, assuming that plaintiff is correct that MCL 445.907 presents an alternative and lesser pathway to demonstrating standing, the problem remains that plaintiff has already conceded the failure to satisfy the ultimate statutory requirement, which is an allegation of an MCPA violation. MCL 445.907 appears to require the plaintiff to demonstrate probable cause to believe that the MCPA has been violated before the investigative process may even commence. See MCL 445.907(1) (stating that "if it finds probable cause to believe a person has engaged, is engaging, or is about to engage in a method, act, or practice which is unlawful under this act, [the circuit court] may, after an ex parte hearing, issue a subpoena compelling a person to appear before

---

[8] I take no stance on what the effective standard for demonstrating standing may be. I state this simply to point out the weakness of the argument that the probable-cause requirement in MCL 445.907(1) means that plaintiff need not show any violation of the statute.

10

the attorney general and answer under oath questions relating to an alleged violation of this act"). In other words, I question how the lower bar of a probable-cause standard would help plaintiff here when plaintiff has conceded that there is no allegation of an MCPA violation, and there is thus not even probable cause to believe that the MCPA has been violated.[9]

Second, plaintiff argues that the breadth of the declaratory-judgment rule requires liberal construction to afford flexible remedies to parties, and thus, there is an entitlement to relief. See *Shavers v Attorney General*, 402 Mich 554, 588; 267 NW2d 72 (1978). To support this point, plaintiff focuses on the language in MCR 2.605(A)(2) that an action is considered within the court's jurisdiction if the court "would have jurisdiction" as opposed to "has jurisdiction." But establishing jurisdiction under the court rule is only one of the requirements to reach a justiciable claim. Declaratory relief is available "[i]n a case of actual controversy within its jurisdiction[.]" MCR 2.605(A)(1). Without an actual controversy, declaratory relief is unavailable. And without trying to argue a violation of the MCPA, there's no actual controversy. Fundamental to obtaining declaratory relief on the parties' rights and obligations under the MCPA is asserting that a violation of the MCPA may have occurred. "The existence of an 'actual controversy' is a condition

---

[9] The majority also implies that plaintiff's burden was met because the civil probable-cause standard is lower and more relaxed than the criminal probable-cause standard. On this point, it cites *Cavalry SPV I, LLC v Morrisey*, 232 W Va 325, 335; 752 SE2d 356 (2013). While *Cavalry SPV I* does suggest that the civil probable-cause standard is more relaxed than the criminal probable-cause standard in West Virginia, even assuming this lower standard applies with parallel force in Michigan, the majority makes no reference to the probable cause plaintiff has pled or how that would meet the relaxed civil probable-cause standard.

11

precedent to the invocation of declaratory relief. In the absence of an actual controversy, the trial court lacks subject-matter jurisdiction to enter a declaratory judgment." *Lansing Schs Ed Ass'n, MEA/NEA v Lansing Bd of Ed (On Remand)*, 293 Mich App 506, 515; 810 NW2d 95 (2011) (citations and quotation marks omitted). Despite citing this same caselaw, the majority does nothing to explain why an actual controversy should be presumed here in order to create subject-matter jurisdiction where there is none.

"Though a court is not precluded from reaching issues before actual injuries or losses have occurred, there still must be a present legal controversy, not one that is merely hypothetical or anticipated in the future." *League of Women Voters of Mich v Secretary of State*, 506 Mich 561, 586; 957 NW2d 731 (2020) (citation and quotation marks omitted). Certainly, we have noted that, generally, " 'actual controversy' exists where a declaratory judgment . . . is necessary to guide a plaintiff's future conduct in order to preserve his legal rights," *Shavers*, 402 Mich at 588, but until today, we have never veered away from upholding the "actual controversy" requirement that has always restricted our ability to venture into shaping the law solely based on hypothetical scenarios. "[B]efore affirmative declaratory relief can be granted, it is essential that a plaintiff, at a minimum, pleads facts entitling him to the judgment he seeks and proves each fact alleged, *i.e.*, a plaintiff must allege and prove an actual *justiciable* controversy." *Id*. at 589.

The majority ignores this restriction by answering future or hypothetical questions. See *ante* (proposing two hypothetical scenarios in which plaintiff could have an actual controversy to consider and noting that, "[i]n either of these situations, this Court would have had the authority to address . . . the proper interpretation of MCL 445.905(1)(a)"). But nowhere in MCR 2.605(A) or in any opinion written by this Court have we decided to

12

waive the actual-controversy requirement for these purposes. See *ante* ("Instead of requiring the parties to ping-pong back to the circuit court just to file additional motions that bring the very same issues back to this Court, we conclude that there is an active case or controversy").[10] That there might be an actual controversy under another set of circumstances, assuming a different set of facts, says nothing about whether an actual controversy exists under the set of circumstances presented in the case before us. To rely on *hypothetical* facts to argue that there is an actual, and not a hypothetical, controversy in this case is a novel choice that the majority has not supported with past caselaw, because such caselaw does not exist.

Even if there had been an actual controversy in this case, the majority would have exceeded the permissible scope of declaratory relief that we could offer.[11] Stated

---

[10] Additionally, the majority sidesteps the actual-controversy requirement by relying on the fact that plaintiff filed a secondary case in a separate docket, which is now being held in abeyance for our decision today. The majority presents no support for its claim that the legal requirements of one case can be met because of the existence of a separate case that is not part of the record for a court to consider.

[11] The majority summarily asserts that the issuance of investigative subpoenas is an "actual case." The investigative-subpoena process is an ex parte process that provides one party, the Attorney General, with the authority to obtain information that may or may not inform a future lawsuit. MCL 445.907. All records obtained within this process are to be "confidential records of the office of the attorney general and shall not be available for public inspection or copying or divulged to any person" unless provided for within the investigative-subpoena statute. MCL 445.907(6). At no point in this process is a lawsuit commenced, nor is there any guarantee or probability that one will be commenced. At no point in this process does the Attorney General seek to obtain a court's subject-matter jurisdiction to hear a case or personal jurisdiction over any defendant. There is no plaintiff and no defendant under this process. There is no court oversight beyond the initial issuance of subpoenas. The issuing court is without power to issue a final order. And thus, there is no right to appeal. Compare this process with the plain language of our declaratory-relief rule, which explains that, "[i]n a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested

13

differently, even if plaintiff had been entitled to declaratory relief in this case, it is the trial court where this case was filed that "may declare the rights and other legal relations" of the parties. MCR 2.605(A)(2). "A declaratory judgment is not *needed* to guide plaintiffs' future conduct." *League of Women Voters*, 506 Mich at 586. Quite the contrary. *Smith* and *Liss* are binding precedent—the parties agree on that, and they agree on what the opinions hold and how they affect all the parties' rights and responsibilities. See, e.g., *Karaczewski v Farbman Stein & Co*, 478 Mich 28, 57; 732 NW2d 56 (2007) (MARILYN KELLY, J., dissenting) (explaining that our opinions remain good law until we expressly overrule them), overruled in part on other grounds by *Bezeau v Palace Sports & Entertainment, Inc*, 487 Mich 455 (2010). To the extent that plaintiff has demonstrated standing, the declaratory relief that could be available would simply be an explanation of what plaintiff has conceded—that *Smith* and *Liss* would seemingly bar this lawsuit. In

---

party seeking a declaratory judgment, whether or not other relief is or could be sought or granted." MCR 2.605(A)(1). It would seem imperative, at a minimum, that the process through which we find a case or controversy would be one in which a court of record has oversight over and involvement with actual parties to a lawsuit. Further, since investigative subpoenas are not pleadings and "[n]o other form of pleading is allowed," MCR 2.110(A), these subpoenas should not clear the threshold for meeting the actual-controversy requirement. *Shavers*, 402 Mich at 589 ("[B]efore affirmative declaratory relief can be granted, it is essential that a plaintiff, at a minimum, *pleads facts* entitling him to the judgment he seeks and proves each fact alleged, *i.e.*, a plaintiff must allege and prove an actual *justiciable* controversy.") (first emphasis added).

Further, even assuming this to be an "actual case," the essential element of MCR 2.605 has always been an actual legal controversy. See, e.g., *League of Women Voters*, 506 Mich at 586. It cannot be said that there is a legal controversy here, where all parties agree on the law that bound the parties' behaviors. This holding would enable a savvy prosecutor to seek declaratory relief simultaneously with the filing of a petition seeking a warrant to pursue evidence in a criminal investigation to make the ensuing prosecution easier.

14

other words, given plaintiff's agreement that *Smith* and *Liss* are binding precedent and that they are fatal to plaintiff's lawsuit, a declaratory judgment is not needed to guide plaintiff's conduct; plaintiff is eminently aware of what the law states and wishes to change it. That is simply not the end to which a declaratory judgment is suited. Although the majority notes that plaintiff's plans are not hypothetical here, a declaratory judgment is not necessary to guide the parties' future conduct, as plaintiff agrees that *Smith* and *Liss* bar any argument that defendant has violated the MCPA. The majority's argument to the contrary curiously ignores this reality.

Further, the majority also faults defendant for having stipulated to resolve the declaratory-relief question prior to resolving the underlying merits of the suit. But, given that declaratory relief has never previously been made available either where an actual case or controversy was lacking or when a party was seeking to overturn settled law, defendant's stipulation that resolving this question would be more efficient should not be construed as an understanding that this Court might use this case as a vehicle to overturn past precedent.[12] A plaintiff's pleadings, and not a defendant's actions, have always been the

---

[12] The distinction between this case and *City of Coldwater v Consumers Energy Co*, 500 Mich 158; 895 NW2d 154 (2017), is clear. None of the motions for declaratory relief were filed in that case solely to change the law, as here. In *Coldwater*, two regulatory cases were consolidated by the Court of Appeals in which Consumers Energy and the municipal plaintiffs disputed the utility's right of first entitlement under Rule 460.3411(11) (Rule 411) of the Michigan Administrative Code, as well as the application of MCL 124.3, and how these sources of law affected the parties' practical responsibilities, rights, and obligations. *Id*. at 163. Consumers Energy, the defendant in both cases, believed that *Great Wolf Lodge of Traverse City, LLC v Pub Serv Comm*, 489 Mich 27; 799 NW2d 155 (2011), supported its understanding of Rule 411; the municipal plaintiffs disagreed. The correct application of Rule 411 and *Great Wolf Lodge* was not immediately apparent to the parties involved in either lawsuit, and we overturned *Great Wolf Lodge* only "[t]o the extent that [it] can be read to hold that Rule 411 is applicable in cases involving disputes between [Public Service Commission]-regulated utilities and municipal utilities over which entity

15

focus of our standing inquiry. Defendant took no action to declare a case of actual controversy by *jointly* stipulating to ask the trial court to determine whether declaratory relief would be available and, if so, what its responsibilities were under the *current* state of the law. Even if the joint stipulation did have such an effect, we have not held that a

---

can provide electric service[.]" *Coldwater*, 500 Mich at 171. *Coldwater* thus involved a contested dispute over how one of our opinions could be read to affect the parties' legal obligations. The lower courts also provided their interpretations of these obligations. See *City of Holland v Consumers Energy Co*, 308 Mich App 675; 866 NW2d 871 (2015). In sum, there was an actual controversy that required a court's judgment to guide the parties' conduct. See *Shavers*, 402 Mich at 588.

In contrast, at no point in this case did either of the parties or the lower courts contest the fundamental premise that *Smith* and *Liss* were binding. The Court of Appeals summarized this point:

> Plaintiff argues that this Court should issue an opinion urging our Supreme Court to overturn the pertinent holdings in *Smith* and *Liss*. We decline the invitation to do so.
>
> Our Supreme Court is responsible for overturning its own precedent and can do so if it chooses. "It is the duty of the Supreme Court to overrule or modify [its] caselaw . . . , and the Court of Appeals and the lower courts are bound by the precedent established by the Supreme Court until it takes such action." *People v Metamora Water Serv, Inc*, 276 Mich App 376, 387-388; 741 NW2d 61 (2007). [*Eli Lilly*, unpub op at 2 (alterations in original).]

Plaintiff never pled an *actual* case or controversy. The parties never disputed any relevant or applicable point of law; although the parties disagree on whether *Smith* and *Liss* were correctly decided, this is meaningfully distinct from an argument about what *Smith* and *Liss* actually say and how they affect the rights and obligations of the parties. It is again the case that a declaratory judgment is inherently the wrong vehicle for the relief that plaintiff seeks here; unlike the parties in *Coldwater*, who debated the application of *Great Wolf Lodge*, the parties here have no such dispute, and plaintiff is not seeking any advice on the extent of the parties' rights and obligations under binding law. The lower courts had no legal authority to clarify. This was a lawsuit filed solely to get before our Court to persuade us to change the law. Although the majority cites one case in which moving for declaratory relief ultimately resulted in a modification of our caselaw, the majority relies too heavily on this one distinct example to offer declaratory relief in a way this Court has never done before.

16

plaintiff need not plead a case of actual controversy if some legal or procedural hurdle makes it more difficult to do so.

Plaintiff has made no attempt to plead a violation of the MCPA or to explain to the trial court an area of the law that needs further explanation so that the parties can understand their legal rights and responsibilities under the MCPA. Plaintiff has not advanced an actionable claim that we can answer at this time.

### III. CONCLUSION

Whether *Smith*, *Liss*, or both cases have improperly interpreted the MCPA are questions we are unable to reach because plaintiff does not have standing to litigate those questions. Until today, a plaintiff in this state was always required to show that there was an actual case or controversy before a court could resolve their issue. This requirement served the important purposes of protecting innocent parties against lawsuit and acting as a check on our own authority to resolve hypothetical problems. Today, the majority overturns two opinions after overhauling our standing doctrine. Although the majority tries to cabin its holding to the facts presented in this case and to the specific context of MCPA investigatory subpoenas, its reasoning that standing should be found whenever alternative facts would establish standing would seem to grossly expand our standing doctrine without restriction.

I reserve all judgment on whether *Smith*, *Liss*, or both cases have analytic flaws or whether those cases ought to be preserved by way of stare decisis. Instead, I would simply affirm the longstanding requirement that a party needs to demonstrate standing before our

17

Court can address the underlying substantive legal issues presented.  Therefore, I respectfully dissent.

Kyra H. Bolden
Brian K. Zahra
Richard H. Bernstein